872 F.2d 1028
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
June RENDER, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 88-5535.
 United States Court of Appeals, Sixth Circuit.
 April 3, 1989.
 
 Before BOYCE F. MARTIN, Jr. and RYAN, Circuit Judges, and GEORGE C. SMITH, District Court Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Plaintiff appeals the order of the district court accepting the magistrate's report and recommendation and granting summary judgment to the Secretary in this action for Widow's Insurance Benefits and Supplemental Security Income. Because substantial evidence supports the Secretary's conclusion that none of plaintiff's impairments meet or exceed the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the decision of the district court is affirmed.
 
 I.
 
 2
 Claimant was born September 9, 1934, and completed the third grade. She worked for General Electric for about three months at the age of eighteen, and has not worked outside of the home since. She took care of her husband at home until his death on November 19, 1985. On November 29, 1985, claimant filed an application with the Secretary seeking both Widow's Insurance Benefits and Supplemental Security Income, alleging disability due to " 'high blood pressure, heart trouble (rapid beat), swelling of legs and feet, kidney problems, lots of infections, nerves, bad eyes, bad arthritis.' " This appeal addresses only the alleged heart trouble.
 
 
 3
 Claimant was examined on January 20, 1986 by Dr. Hendrix for the Secretary, and in spite of allegations of "a confusing array of symptoms that were all unrelated," Dr. Hendrix concluded that "[t]he only objective problem I could ascertain was the diffuse crackles in her lung fields and the interstitial nodular changes on her chest x-ray suggesting an interstitial pathology particularly in light of her pulmonary function tests consistent with mild restriction." Dr. Hendrix specifically recorded his impression that "the history of chest pain was like the rest of the history, suspect and difficult to evaluate." Claimant's EKG showed nonspecific ST changes. Her chest x-ray revealed that her heart "is borderline enlarged without pulmonary vascular congestion."
 
 
 4
 Claimant was admitted to Ohio County Hospital on January 28, 1986, complaining of "extreme shortness of breath, chest pain and numbness all over." Upon initial examination, both Dr. Johnson and Dr. Wong concluded that claimant suffered from congestive heart failure. They apparently based their conclusion upon a radiology examination conducted by Dr. Myers on January 29. Dr. Myers stated that although the heart was not enlarged, "[t]here do appear to be vascular congestive changes throughout the lungs...." However, Dr. Myers also stated that while "[i]t is conceivable that it [the congestive changes] might ... be on the basis of congestive failure ...[,] it appears to be more consistent with consolidation." Furthermore, a subsequent examination conducted on February 3 by Dr. McCormack revealed that "[t]here has been a rather marked improvement in the appearance of the chest since the last study. The heart remains within the upper normal size limits. The pulmonary vascular congestive changes have certainly dimished [sic] rather dramatically since the last exam."
 
 
 5
 On June 10, 1986, Dr. Clay submitted a Residual Functional Capacity Assessment in which he concluded that claimant could lift up to 50 pounds, frequently lift and carry 25 pounds, stand or walk 6 hours per day, and sit 8 hours per day.
 
 
 6
 On August 29, 1986, Dr. Johnson, plaintiff's treating physician, submitted a letter stating that claimant "is seriously ill with progressive obesity, hypertension, and hypertensive cardiovascular disease.... Under no circumstances is she able to perform labor or other gainful employment of the type which she is qualified for or has any training for. In short, I feel she is totally and permanently disabled from any gainful employment at this time." Dr. Johnson followed this up with a note dated November 24, 1986, which states that claimant is "totally and permanently disabled due to advanced and life-threatening hypertensive cardiovascular disease." Dr. Johnson submitted no clinical evidence documenting these conclusions.
 
 
 7
 After initial denial of plaintiff's claims, a hearing was conducted by an Administrative Law Judge (ALJ) on December 2, 1986. The ALJ subsequently issued opinions affirming the denial of plaintiff's claims. In denying plaintiff's claim for Widow's Insurance Benefits, the ALJ concluded that none of plaintiff's complaints met or exceeded any impairment found in the listing of impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1 (1988). For this reason, claimant was not disabled within the meaning of 20 C.F.R. Sec. 404.1578 (1988), and was therefore not entitled to Widow's Insurance Benefits under 20 C.F.R. Sec. 405.1577 (1988). After repeating the same analysis in his opinion affirming the denial of Supplemental Security Income benefits, the ALJ concluded that claimant had the residual functional capacity for light work, and given her age and education, Rule 202.10 from Table No. 2, 20 C.F.R. Subpart P, Appendix 2 (1988) ("the grid") directed a finding that claimant was "not disabled," and therefore not entitled to Supplemental Security Income benefits. The Appeals Council subsequently affirmed the ALJ's decision, and this appeal followed.
 
 II.
 
 8
 This court's review of the final decision of the Secretary in a Social Security Disability case is limited to a determination of whether substantial evidence supports the Secretary's findings. 42 U.S.C.A. Sec. 405(g) (1983). "The determination of whether there is substantial evidence to support the Secretary's finding must be based on the record as a whole. Substantial evidence means more than a mere scintilla; it is such relevant evidence that a reasonable mind would accept as adequate to support a conclusion." Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir.1986) (citations omitted).
 
 
 9
 Claimant argues on appeal that the ALJ's finding that she did not meet or exceed the listing for congestive heart failure is not supported by substantial evidence. The listing in question provides:
 
 
 10
 Congestive heart failure (manifested by evidence of vascular congestion such as hepatomegaly, peripheral or pulmonary edema). With:
 
 
 11
 A. persistent congestive heart failure on clinical examination despite prescribed therapy;
 
 
 12
 20 C.F.R. Part 404, Subpart P, Appendix 1, Sec. 4.02 (1988). Claimant argues that the diagnoses of Dr. Johnson and Dr. Wong along with the radiology report prepared by Dr. Myers established that claimant suffered from congestive heart failure, and thereby met the listing. However, claimant's argument is undercut by Dr. Myers' stated opinion that the congestive changes appeared more consistent with consolidation than congestive failure, and by the report of Dr. McCormack which indicated a "marked improvement" in claimant's condition and specifically stated that the "pulmonary vascular congestive changes have certainly dimished [sic] rather dramatically since the last exam." Section 4.02(A) of the listing specifically states that congestive heart failure must be "persistent." When considered along with the report of Dr. Hendrix, which also concluded that claimant was "without pulmonary vascular congestion," there is clearly substantial evidence to support the ALJ's conclusion that the claimant's impairment did not meet the listing requirement of "persistent congestive heart failure."
 
 
 13
 Claimant also argues that the ALJ erred by failing to give due consideration to the opinion of Dr. Johnson, claimant's treating physician. Claimant contends that Dr. Johnson's diagnosis of "progressive obesity, hypertension and hypertensive cardiovascular disease" supported his conclusion that she was incapable of performing light work. Claimant points out that Dr. Clay, whose functional capacity assessment was relied upon by the ALJ, never examined the claimant. The ALJ specifically rejected Dr. Johnson's conclusions because "the medical evidence does not support his statements and opinions." The ALJ noted that Dr. Johnson's August 29, 1986 letter was internally inconsistent in that he stated that claimant has uncontrolled hypertension while at the same time stating that she required large dosages of medication to control it. Dr. Clay's conclusions about claimant's residual functional capacity are supported somewhat by claimant's disability questionnaire on which she indicated that she stood four hours a day, spent four hours a day walking, that she frequently and carried up to twenty-five pounds, and that she occasionally bended. Claimant's reliance upon Dr. Johnson, the treating physician, may properly be discounted by the ALJ if it is not supported by sufficient medical evidence. Landsaw, 803 F.2d at 213. In this case, Dr. Johnson's opinion was not supported by any clinical data whatever. For this reason, Dr. Clay's opinion, supported by claimant's own statement, constitutes substantial evidence that claimant was capable of performing light work.
 
 
 14
 We hold that the Secretary's findings are supported by substantial evidence.
 
 
 15
 AFFIRMED.
 
 
 
 *
 The Honorable George C. Smith, United States District Judge for the Southern District of Ohio, sitting by designation